UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: EDWARD E. GILLEN CO., *in the matter of the complaint of, as owner pro hac vice of the M/V P-T II, Her Engines, Tackle, Appurtenances, Furniture, etc., praying for Exoneration from or Limitation of Liability,* <br><br>         Plaintiff,<br><br>v.<br><br>EDWARD GRENIER and CASE FOUNDATION COMPANY,,<br><br>         Defendant. | Case No. 09-CV-114-JPS |
| EDWARD GRENIER,<br><br>         Plaintiff,<br>and<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>         Intervening Plaintiff,<br>v.<br><br>CASE FOUNDATION COMPANY,<br><br>   Defendant & Third Party Plaintiff,<br><br>v.<br><br>EDWARD E. GILLEN CO.,<br><br>         Third Party Defendant. | Case No. 09-CV-115-JPS<br><br><br><br>ORDER |

This case arises out of an accident on a vessel on Lake Michigan. Before the court are claimant-defendant-third party plaintiff Case Foundation Company's ("Case") motion for partial summary judgment and limitation plaintiff-third party defendant, Edward E. Gillen Co.'s ("Gillen Co.") motion for partial summary judgment on claimant and consolidated plaintiff Edward Grenier's ("Grenier") claim for vessel unseaworthiness. The parties have fully briefed the court on the relevant issues related to the motions for partial summary judgment and, as a result, the court is prepared to rule on the motions.

BACKGROUND

The material facts are largely undisputed and are as follows: Grenier claims he sustained an injury on September 16, 2005, while on board the M/V P-T II, a boat owned by Case and operated by employees of Gillen Co. As of the date of the incident, Grenier was employed by Case as a crane operator working on board a mobile crane barge that was positioned in Lake Michigan. Plaintiff claims he was injured as he was tossed about during inclement weather while riding aboard the M/V P-T II, which was transporting him from shore to the crane barge at the start of his work day. Grenier admits that he was merely a passenger on board the M/V P-T II, and that he was never a crew member of that vessel. (Scott Aff., Ex. C. [Grenier Dep. at 222-23]) (Docket #115-3). Grenier's claim is that the M/V P-T II was unseaworthy and that such unseaworthiness was a proximate cause of Grenier's injuries.

DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Here, Case and Gillen Co. argue they are both entitled to summary judgment on Grenier's claim for vessel unseaworthiness because, at the time of his alleged injury, Grenier was not a crew member of the M/V P-T II, and only crew members may maintain an action for unseaworthiness against the owner of a vessel or the vessel's owner *pro hac vice*.[1] On the other hand, Grenier attempts to argue that his status as a seaman under the Jones Act entitles him to maintain an unseaworthiness claim, regardless of whether he was a crew member of the vessel on which he was injured.

Under general maritime law, ship owners and ship owners *pro hac vice* have a duty to provide their crew with a seaworthy vessel. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960). In other words, the ship owner must

---

[1]An owner *pro hac vice* is an individual "who 'stands in the place of the owner for the voyage or service contemplated and bears the owner's responsibilities, even though the latter remains the legal owner of the vessel.'" *Matute v. Lloyd Bermuda Lines, Ltd.*, 931 F.2d 231, 235 n. 2 (3d Cir. 1991) (quoting *Aird v. Weyerhaeuser S.S. Co.*, 169 F.2d 606, 610 (3d Cir. 1948)). It is undisputed that Gillen Co. was the owner *pro hac vice* of the M/V P-T II.

furnish its crew with a vessel and appurtenances reasonably fit for their intended use. *Id.* In *Seas Shipping v. Sieracki*, 328 U.S. 85 (1946), the Supreme Court held that a vessel owner's duty to furnish a seaworthy vessel was broad. The duty owed was not limited merely to the vessel's crew, but rather extended to plaintiffs "doing a seaman's work and incurring a seaman's hazards." *Id.* at 99. Specifically, the Court held that the duty to maintain a seaworthy vessel extended to longshoremen who, although they were not crew members of the particular vessel, were aboard the vessel with the owner's consent. *Id.* Congress, however, rejected this holding when it amended the Longshore and Harbor Workers' Compensation Act (LHWCA) in 1972. The 1972 amendment provided that any "person covered" under the LHWCA may no longer bring an action against a third-party vessel owner "based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred." 33 U.S.C. § 905(b). Thus, with the passage of this amendment, Congress made clear that it was abolishing the *Sieracki* unseaworthiness claim for plaintiffs covered by the LHWCA.

Following the amendment, courts were faced with the question of whether *Sieracki* still survived with respect to those maritime workers who are not governed by the LHWCA. Several federal courts have concluded that unseaworthiness claims can no longer be brought by plaintiffs who are not crew members of the defendant's vessel. For instance, in *Smith v. Harbor Towing & Fleeting, Inc.,* 910 F.2d 312 (5th Cir. 1990), the Fifth Circuit held that a *Sieracki* unseaworthiness claim cannot be brought by seamen covered under the Jones Act and injured aboard vessels on which they are not crew members. The *Smith* court reasoned that Jones Act seamen have "a variety of possible remedies" available to them, including claims for

unseaworthiness, maintenance and cure, and Jones Act negligence against their employer. *Id.* at 314. Thus, "there is no need for [Jones Act plaintiffs] to join the pocket of *Sieracki* seamen." *Id.* at 315. Likewise, the Ninth Circuit in *Normile v. Maritime Company of the Phillippines,* 643 F.2d 1380 (9th Cir. 1981) held that the 1972 amendments by Congress abolished *Sieracki* actions not only for private longshoremen covered by the LHWCA, but also for public longshoremen. According to the Ninth Circuit in *Normile*, "[a]ll that the Supreme Court gave, Congress took away," and there remains "no viable precedent" for maintaining an unseaworthiness claim under *Sieracki. Id.* at 1382.

Many district courts have also concluded that unseaworthiness claims can no longer be brought by plaintiffs who are not crew members of the defendant's vessel. *See e.g. Weathers v. Triple M Transp., Inc.*, 2006 WL 897651 (E.D.Ark. Mar.31, 2006) (concluding that because plaintiff had "a variety of remedies" available, there was no need to allow an unseaworthiness claim against a non-employer); *Coakley v. SeaRiver Maritime, Inc.*, 319 F.Supp.2d 712, 716 (E.D.La. 2004) (plaintiff working on a barge while employed as a crewman of a tug vessel could not maintain an action against the barge owner); *Speer v. Taira Lynn Marine, Ltd., Inc.*, 116 F.Supp.2d. 826, 830 (S.D.Tex. 2000) ("In order to bring an unseaworthiness cause of action, plaintiff must be a member of the crew of the vessel on which he suffered his injury."); *Corrigan v. Harvey*, 951 F.Supp. 948, 952 (D.Haw. 1996) ("A seaman cannot assert an unseaworthiness cause of action against a vessel on which he is not a crew member."); *Baker v. Hasbrouck*, 1991 WL 240740, at *3 (D.Ore. Nov. 1, 1991) (The *Sieracki* cause of action "is no longer available in this circuit.").

However, not every federal court has reached the same conclusion. In *Turner v. Midland Enterprises, Inc.*, 2006 WL 527006 (E.D.Ky. Mar. 3, 2006), the Eastern District of Kentucky allowed a Jones Act seaman to maintain an unseaworthiness claim against the owner of a barge on which he was not a crew member. The court concluded that absent controlling case law, there was "no reason to depart from the well-established rule that the warranty of seaworthiness extends to those maritime workers who can claim 'seaman' status under the Jones Act." *Id.* at *4 (citing Thomas J. Schoenbaum, 1 *Admiralty & Marine Law* § 6-27, n .22 (4th ed.)). Moreover, in *Jenkins v. Fitzgerald Marine & Repair, Inc.*, 2007 WL 4290705, at *3 (E.D.Mo. Dec. 4, 2007), the Eastern District of Missouri allowed such a seaworthiness claim to go forward, concluding that the Supreme Court in *Sieracki* made clear that the duty to maintain a seaworthy vessel extends beyond the crew of the particular vessel, and is owed to anyone who performs services for the vessel with the consent of the owner. The *Jenkins* court reasoned that "although Congress invalidated the holding in *Sieracki* as it applies to longshoremen, nothing in the LHWCA amendments implies that an unseaworthiness claim cannot be brought by crew members of other vessels." *Id.*

In the Seventh Circuit, the question of whether an individual must be a crew member of the vessel on which he suffered his injury to bring an unseaworthiness claim against the vessel's owner remains unsettled. At least one district court in this circuit has answered the question affirmatively. *See McEuen v. Lower Illinois Towing Co.*, 2010 WL 569900, at *6 (C.D.Ill. Feb. 11, 2010) (finding that "the duty of seaworthiness extends only to crew members."). While not bound by the above-cited precedent, this court ultimately agrees with the reasoning of those courts that have held that a

ship owner's duty of seaworthiness extends only to crew members of that vessel. In this case, there is no dispute that Grenier – whether or not a Jones Act seaman[2] – was merely a passenger aboard the M/V P-T II, rather than a crew member. He admits as much in his deposition testimony. (Scott Aff., Ex. C. [Grenier Dep. at 222-23]) (Docket #115-3) As such, he cannot maintain a claim of unseaworthiness against either Case or Gillen Co.

Furthermore, the court finds that, contrary to Grenier's assertions, his status as a seaman on board the crane barge owned by his employer – Case – does not automatically entitle him to seek redress for vessel unseaworthiness as to a transport boat, also owned by his employer, and on which he was only a passenger. Grenier relies on the Supreme Court's decisions in *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995) and *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548 (1997) to support his argument in this respect. Yet, Grenier's reliance on these cases is misplaced because they do not stand for the proposition that a plaintiff's status as a seaman/crewmember of one vessel enhances his status from a passenger to that of a seaman on a second vessel associated with his injury merely by virtue of his employer's ownership of both vessels.

---

[2]Gillen Co. argues that not only was Grenier not a crew member on board the M/V P-T II, but also that Grenier was not a seaman vis-à-vis Gillen Co. because the undisputed facts show that Grenier had no role in the maintenance, operation or navigation of the M/V P-T II, nor was he in any way associated with the performance of the ship's work. *See McDermott International, Inc. v. Wilander*, 498 U.S. 337, 355 (1991) (holding that a necessary element of seaman status is employment-related connection to a vessel in navigation; namely, that a seaman perform the work of a vessel). Because the court has found that Grenier was indisputably not a member of the M/V P-T II's crew and that this lack of status is dispositive of his unseaworthiness claim, the court will refrain from determining whether Grenier was or was not a Jones Act seaman vis-à-vis Gillen Co. for purposes of this order.

Indeed, while the *Chandris* and the *Papai* Courts held that seaman status was allowable for "'those workers who had the requisite connection with an "identifiable fleet" of vessels'" – in other words, "'a finite group of vessels under common ownership or control,'" the Supreme Court still emphasized that for purposes of a Jones Act seaman status determination, a worker's connection to a vessel or fleet of vessels must be "substantial in terms of both its duration and its nature." *Papai*, 520 U.S. at 554 (quoting *Chandris*, 515 U.S. at 368). Thus, the simple fact that Case owned the crane barge – a vessel on which Grenier was employed as a seaman – and also owned the M/V P-T II – a vessel on which Grenier was injured in his capacity as a passenger – is not enough to allow Grenier to maintain a cause of action for unseaworthiness against Case as to the M/V P-T II. In the end, the relevant inquiry remains whether Grenier was "doing the ship's work" when he was injured. *Wilander,* 498 U.S. at 355. As the court has previously noted, it is undisputed that Grenier was merely a passenger on board the M/V P-T II and, therefore, Grenier was not engaged in that vessel's work. Accordingly, Grenier may not maintain an unseaworthiness action against Case on the sole basis that Case owned both the crane barge and the M/V P-T II. For the foregoing reasons, the court will grant both Case's and Gillen Co.'s motions for partial summary judgment as to Grenier's unseaworthiness claims.

Accordingly,

IT IS ORDERED that claimant-defendant-third party plaintiff Case's motion for partial summary judgment (Docket #98) be and the same is hereby GRANTED as to claimant and consolidated plaintiff Edward Grenier's claim for vessel unseaworthiness; and

IT IS FURTHER ORDERED that limitation plaintiff-third party defendant Edward E. Gillen Co.'s motion for partial summary judgment (Docket #114) be and the same is hereby GRANTED as to claimant and consolidated plaintiff Edward Grenier's claim for vessel unseaworthiness.

Dated at Milwaukee, Wisconsin, this 7th day of September, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge